

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

TJT:PJC
F. #2021R00440

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 6, 2026

By Email

The Honorable Marcia M. Henry
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Inwoo Kim, et al.
             Docket No. 26-MJ-28

Dear Judge Henry:

      The government respectfully submits this letter to request an order of detention with respect to the defendant Daniel Lee, also known as "Daniel Yang" and "Donghee Yang."  Lee is a 56-year-old naturalized United States citizen who was arrested this morning pursuant to an arrest warrant authorized by the Honorable Marcia M. Henry, United States Magistrate Judge, following the filing of a complaint.  (ECF No. 1 (the "Complaint").)  As further described below, the defendant presents a serious risk of flight and poses a danger to the community through attempted witness intimidation, and the government has been presented with no combination of conditions that will reasonably assure his future appearance before this Court.

I.      Background

      The government proffers the following facts concerning the charges at issue and pretrial detention.[1]  See United States v. LaFontaine, 210 F. 3d 125, 130-31 (2d Cir. 2000) (the government is entitled to proceed by proffer in a detention hearing); United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995) (same).

      Between at least 2016 and the present, Lee's co-defendant owned[2] and operated a series of pharmacies and social adult day cares ("SADC") in Brooklyn and Flushing, New York, including, among others, what is identified in the Complaint as Pharmacy-1, Z & W Empire

---

[1] The proffer of facts set forth herein does not purport to provide a complete statement of all facts and evidence of which the government is aware or that it will seek to introduce at trial.

[2] Notably, defendant Kim disguised his ownership interest in some of the Businesses by putting them in others' names, including Lee's, while maintaining control.

Enterprise, Inc., doing business as Royal Adul Day Care Center ("Royal"), Happy Life Inc. ("Happy Life"), and Bushwick Social Day Care ("Bushwick SADC") (collectively, the "Businesses"). Since approximately 2018, Lee has served as the program director at Royal and Happy Life, and he also signed Medicaid long-term managed care ("MLTC") documents on behalf of Royal agreeing to follow the law with respect to submitting Medicaid claims. Lee has also appeared as a signatory on various business bank accounts during the charged time period.

During that time period, the defendants orchestrated a large-scale conspiracy to commit health care fraud by (i) submitting claims to Medicare and Medicaid for approximately $58 million in medically unnecessary prescription drugs and over-the-counter ("OTC") items that were not provided to Medicare beneficiaries and Medicaid recipients, (ii) paying illegal kickbacks and bribes to Medicare beneficiaries and Medicaid recipients who filled prescriptions at Pharmacy-1 and other pharmacies, (iii) submitting claims to Medicaid for approximately $62 million in purported SADC services that were not provided and/or were induced by the payment of kickbacks and bribes, (iv) paying kickbacks and bribes to Medicaid recipients enrolled to receive SADC services from Royal, Happy Life, and Bushwick, and (v) laundering the fraudulent scheme's proceeds to obtain cash for paying illegal kickbacks and bribes and to withdraw profits from the scheme.

Numerous searches were executed today pursuant to search warrants authorized by the Court, including at (i) two locations from which Happy Life operates, (ii) Bushwick SADC, (iii) Lee's residence, (iv) a vehicle operated by Kim and believed to be owned by Lee, and (v) for multiple cell phones, including those belonging to Lee and Kim. These searches recovered substantial evidence of the scheme, including approximately $100,000 in cash from Happy Life, envelopes containing cash at Bushwick SADC, and various other documents related to the ownership and operation of the searched businesses.

Law enforcement also froze several bank accounts today, including one of Lee's personal accounts and a Happy Life business bank account. In total, the freeze involves approximately $900,000 in fraud proceeds.

Numerous text message communications in the government's possession and between the defendants and their co-conspirator demonstrate that kickbacks were paid at Happy Life. For example, as reflected in the Complaint, on approximately August 31, 2022, Lee texted the individual identified as Co-Conspirator-1 in Korean about a payment made to a specific Medicaid recipient. Other evidence, including impossible day analysis and surveillance, demonstrates that Royal, Happy Life, and Bushwick, were billing Medicaid for services that were not provided. This includes billing for more individuals than the premises can hold and billing while individuals were hospitalized.

Multiple sources have informed the government of numerous attempts by Lee to potentially silence potential witnesses and to discourage them from speaking to the government. These sources have indicated that for several weeks beginning in approximately January 2026, defendant Lee has announced to Happy Life members that the individual identified as Cooperating Witness-1 in the Complaint is cooperating with the government against Happy Life. Lee also threatened members, in sum and substance, that they should no longer use Cooperating Witness-

2

1's pharmacy to fill their prescriptions, and that if they did, they would no longer receive cash from Happy Life. Cooperating Witness-1 has expressed fear for his/her safety given his/her public outing as a potential cooperator. Government sources have also explained, in sum and substance, that Lee has threatened Happy Life members not to discuss the cash kickbacks they receive, or else they will not continue to receive cash from Happy Life.

The defendant has significant resources and access to significant amounts of cash. During his arrest as he prepared to board an international flight, Lee was found to possess approximately $40,000 in cash. Financial analysis of Lee's bank accounts shows routine cash withdrawals and transfers from Happy Life, in particular, to Lee's accounts. For example, and as explained in the Complaint, on December 6, 2024, Leed withdrew approximately $120,000 in cash.

II.     Legal Standard

Lee is charged by complaint with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349, which carries a ten-year statutory maximum term of imprisonment.

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. 3142(e) ("no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). The Bail Reform directs that four factors be considered in the detention analysis: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including, among other things, the person's family ties, financial resources, and length of residence in the community; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

III.    Lee Should be Detained

For the reasons set forth below, the above-referenced factors weigh heavily against pre-trial release.

A.      The Nature and Circumstances of the Offense

Lee engaged in a multi-faceted and multi-year fraud scheme that involved many co-conspirators and businesses, stole approximately $120 million dollars from health care benefits programs, and laundered those stolen funds. This conduct was not a single instance of poor judgment, but rather a highly orchestrated scheme with many players that was designed from inception to exploit millions of dollars from government health programs. Rather than operate legitimate health care businesses, Lee and his co-conspirators (i) paid cash kickbacks to Medicare

beneficiaries and Medicaid recipients to induce them to use their businesses, (ii) submitted claims for services that were not provided and/or were induced by kickbacks, (iii) took steps to cover up the scheme and evade detection by law enforcement by changing the ownership of their businesses and who controlled the bank accounts, and (iv) laundered the proceeds of the fraud.

The seriousness of the alleged crime is evident in the substantial penalty that the defendant faces in this case, including a lengthy term of imprisonment. The defendant faces up to ten years if convicted of conspiracy to commit health care fraud. Given the significant loss in this case, his anticipated sentencing exposure under the United States Sentencing Guidelines (the "Guidelines") is likely to be above the statutory maximum, assuming no additional charges are brought. Further, as a naturalized citizen, the defendant also faces potential denaturalization upon conviction. In short, the defendant faces severe consequences if convicted, making him an extreme flight risk.

      B.      <u>The Weight of the Evidence is Overwhelming</u>

The government is prepared to present at trial overwhelming evidence of the defendant's guilt. This includes text messages detailing payments to Medicaid recipients, interviews between the defendant and state investigators that uncovered fraud while he was the program director at Royal, cash seized from his bank accounts, person, and the businesses, financial records demonstrating his motive and ties to the scheme, and cooperating witness testimony that demonstrates his role in paying cash kickbacks, his role in securing cash for paying kickbacks, and his attempts to silence those who might speak out about the scheme.

      C.      <u>The Defendant's Character, Family Ties, Employment, Financial Resources, Length of Residence in the Community, Community Ties, and Past Conduct</u>

Since at least 2018, the defendant's only known employment has been in the businesses affiliated with the charged fraudulent scheme. The defendant is a naturalized United States citizen and he frequently travels overseas to Korea, spending multiple weeks per year outside the United States. The defendant possesses and frequently travels on a Korean passport, which increases his ability to travel internationally and be admitted to Korea.

As noted above, the defendant has the opportunity, resources, and skills to flee in advance of trial and to potentially relocate overseas beyond the jurisdiction of the United States and its extradition powers. Indeed, a central aspect of the defendant's fraudulent scheme was regularly converting significant amounts of fraud proceeds into untraceable cash that was used to pay Medicaid recipients. Each of these factors significantly raises the risk of flight that the defendant poses.

      D.      <u>The Defendant Poses a Danger to the Community</u>

The defendant also poses a danger to the community, including to potential witnesses and co-conspirators in this case. Multiple witnesses have reported to the government Lee's public identification of Cooperating Witness-1 and related threats. The government takes Lee's statements seriously, and Lee's willingness to publicly identify a potential cooperating

witness in the hopes of punishing him/her and silencing others demonstrates that he poses a risk to the community.[3]

IV.     Conclusion

        Given the defendant's access to significant resources and cash, the seriousness of the charges and the weight of the evidence against him, his ties to a foreign country, and the danger he poses to potential witnesses in this case, there is no combination of conditions that would ensure the safety of the community and that the defendant reappears before this Court.  For the reasons set forth above, the Court should deny the defendant bail.

        Respectfully submitted,

        LORINDA LARYEA
        Acting Chief, Fraud Section
        Criminal Division
        U.S. Department of Justice

By:   /s/
        Patrick J. Campbell
        Trial Attorney, Fraud Section
        Criminal Division
        United States Department of Justice
        (202) 262-7067

cc:   Michael Musa-Obregon, Esq. (by email)
      Robert Long, Pretrial Services (by email)

---

[3] The above-referenced factors apply equally for Kim, who was the ringleader of the scheme, is facing substantial evidence of his guilt, has access to significant sums of money, and has ties overseas.  Further, Lee's threats can be interpreted to be aimed at protecting not just the criminal enterprise, but also its participants, including Kim.  While a substantial bond secured by co-signors and/or property may be appropriate to secure Kim's future appearance, as of the submission of this letter, Kim's counsel has not proposed any bond conditions supporting his release and the government must request detention.